# Daniel Tannenbaum, Esq.

580 Fifth Avenue, Suite 820
New York, New York 10036
Telephone: (212) 457-1699

October 26, 2021

**By ECF**

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

>       Re:  *Greene v. City of New York,* 21 Civ. 01552 (JGK)
>            Re:  Fairness Review of FLSA Settlement

Dear Judge Koeltl:

This office represents plaintiff in the above referenced matter. The parties write jointly pursuant to case law in the Second Circuit, to respectfully request that the Court approve the settlement, pursuant to *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015) and dismiss the case with prejudice. The parties have agreed to a negotiated settlement ("Agreement") after extensive settlement discussions. A copy of the fully-executed Agreement is attached hereto as "Exhibit A."

1. **Background and Procedural History**

On February 23, 2021, plaintiff, on behalf of himself and others similarly situated, filed a Complaint against defendant City of New York alleging that the City failed to comply with the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), the overtime, notice and recordkeeping, and wage statement provisions of the New York Labor Law, and retaliated against him in violation of the FLSA and New York Labor Laws. Plaintiff also sought attorneys' fees, costs and interest.

Plaintiff, Michael Greene, is a City employee who was previously employed in title of Paralegal Aide at the New York City Department of Environmental Protection ("DEP") from March 2018 until February 2019. Both prior to, and subsequent to his employment at DEP, he has been employed by the City in the New York City Human Resources Administration ("HRA") as an Eligibility Specialist. Plaintiff claimed that while he was employed at DEP he typically worked 45 hours per week, from 8:30am until about 5:30pm, 5 days a week. He claims the City automatically deducted an hour of pay per day for a meal period, even though he was not granted uninterrupted break or meal periods. He also claims that he was required to work additional hours beyond his regular shift and did not receive compensation for them.

Plaintiff alleges that on October 19, 2018, he wrote an email with the subject line of "uncompensated overtime" stating he was being denied overtime pay for work performed as his schedule was regularly leading him to have to spend time working off the clock. When speaking with DEP's Chief of Administrative Compliance and Special Projects, Yocanda Baez, regarding an email, plaintiff stated to her that he was "off the clock," but she made him stay as she informed him that it would not take long. Plaintiff also shared a text message dated October 24, 2018 and an email on November 19, 2018 related to complaints regarding deprivation of work and meal breaks.

As a result of these complaints, plaintiff alleges that he was targeted for disciplinary action and removal from DEP. Plaintiff specifically believes Ms. Baez filed disciplinary charges against him and moved for his dismissal. On February 1, 2019, DEP terminated plaintiff's probationary employment. Plaintiff has since returned to his prior position at HRA.

On May 3, 2021, defendants filed a letter seeking a pre-motion conference to set forth the basis for defendants' anticipated motion to dismiss the second, third, fourth, fifth and sixth causes of action. On May 19, 2021, plaintiff filed a First Amended Complaint, alleging that the City failed to comply with the overtime provisions of the FLSA and retaliated against him in violation of the FLSA.

On July 2, 2021, defendants filed an Answer to the First Amended Complaint. On July 23, 2021, the Court referred this matter to mediation. Thereafter, in addition to a pre-mediation telephone conference with the mediator, plaintiff provided defendant with a settlement demand. The parties then engaged in several settlement discussions. On October 12, 2021, the parties agreed to resolve the matter

## 2. **Settlement Terms**

The parties have agreed to settle this action in its entirety for the payment of the following by defendants:

   a) $35,000.00 in damages, inclusive of attorneys fees and costs;

   b) $1,491.26 in liquidated damages; and

   c) $2,236.89 in backpay.

As noted above, for the Court's convenience a copy of the Agreement is annexed hereto as Exhibit A.

## 3. **Applicable Factors for Approving FLSA Settlements**

The Second Circuit requires that settlement agreements in Fair Labor Standards Act (FLSA) cases obtain court or Department of Labor approval. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). District courts in the Second Circuit "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Clem v. Keybank, N.A.*, 2014 U.S. Dist. LEXIS 87174 (S.D.N.Y. June 20, 2014) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

Courts evaluating whether stipulated FLSA settlements are reasonable consider a variety of factors, including:

(1) the plaintiffs' range of possible recovery;

(2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;

(3) the seriousness of the litigation risks faced by the parties;

(4) whether the settlement is the product of arm's-length bargaining between experienced counsel; and

(5) the possibility of fraud or collusion.

*See Wolinsky v Scholastic, Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (internal quotations omitted).

### 4. **Application of FLSA Factors to the Proposed Settlement**

As discussed below, the parties believe that the proposed settlement terms in this case are fair and reasonable to plaintiff and defendants. The settlement represents a good faith compromise of the parties' *bona fide* dispute regarding whether defendant violated the FLSA, and whether an award of liquidated damages is appropriate. Defendants' defenses to the extent there were FLSA violations, if any, they were not willful and were in good faith, were asserted and considered in the settlement negotiations. Plaintiff's counsel shared his calculations of the damages under plaintiff's theories and the parties used this information to negotiate a fair settlement. This compromise was reached after arms-length negotiations between the parties.

As to the range of recovery, plaintiff considers this to be a fair settlement because it equals the back-pay and is 2/3 of the amount of liquidated damages that he believes he has estimated he is owed. In addition, plaintiff is receiving $35,000, inclusive of attorneys fees, tied to his retaliation claim. This is particularly significant because if defendant were to prevail on a summary judgment motion, even on just the retaliation claim, plaintiff would stand to recover far less. On the other hand, if defendants' anticipated motion for summary judgment was to be denied, defendants would risk a significantly higher award of damages and attorney's fees. These facts, coupled with: a) the early stage of litigation; and b) the relatively swift payout to plaintiff (as opposed to a speculative payment after years of litigation in the District Court) weigh in favor of settlement.

With respect to avoiding anticipated burdens and expenses, litigating FLSA damages can be and would be a fact-intensive process demanding in-depth and costly investigation by both parties. Without this settlement, both parties would need to spend significant amounts of time, money and expense to undertake lengthy discovery. Furthermore, with respect to the third factor, as noted above, there is no guarantee of success on either side. Given the uncertainty over the potential outcome, both parties were motivated to settle this dispute. With respect to the fourth factor, both parties engaged in good faith, arm's-length negotiation in reaching this settlement. Counsel for both parties, armed with instructions from their clients, discussed settlement terms until a tentative settlement was reached. The fact that the settlement was negotiated at arms' length, compels the conclusion that the he proposed settlement is fair and should be approved. *Chapman-Green v. Icahn House West. LLC*, 2013

U.S. Dist. LEXIS 25671 (S.D.N.Y. 2013) ("[T]he surrender of the possibility of liquidated damages gives plaintiff immediate relief and avoids the risk, which is not insubstantial, of a potential loss or a much smaller recovery."); *Johnson v. Brennan*, 2011 WL 4357376, *12 (S.D.N.Y. 2011) ("If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement."). This is particularly so in light of the fact that the settlement is the result of hard fought negotiations between counsel. *Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, 2-3 (S.D.N.Y. 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement."); *Hernandez v. C-Penn Foods Inc.,* 2011 U.S. Dist. LEXIS 144798 (S.D.N.Y. 2011) ("[G]iven the disputed issues of fact relating to plaintiff' wage claims and the fact that the settlement was reached pursuant to arm's length negotiations, the Court finds that the settlement agreed to in this action is fair and reasonable."). Finally, given the parties' arms-length negotiating, the parties believe that there was no opportunity for and no possibility of fraud or collusion. The parties represented their clients zealously and obtained what both parties consider to be an appropriate settlement.

**5.     Attorney's Fees and Costs**

Plaintiff's counsel will receive $13,186.05 from the settlement fund as attorneys' fees and costs. This represents one third of the recovery in this litigation (inclusive of costs) as agreed to by Plaintiff and his counsel in Plaintiff's retainer agreement, which provides that one third of Plaintiff's recovery will be retained by the firm plus costs.

The amount provided as fees/costs to plaintiff's counsel from the settlement fund – one third of the settlement amount plus costs– is "fair and reasonable using a 'percentage-of-recovery' method of calculation, consistent with 'the trend in this Circuit.'" *Hens v. Clientlogic Operating Corp.*, 2010 WL 5490833, at *2 (W.D.N.Y. 2010) (quoting *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)). Further, the costs and fees requested are in accordance with the Plaintiff's contingency fee engagement agreement with counsel. *See e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 111-12 (2d Cir. 2007) (holding that private retainer agreement granting attorneys one third of total damages was valid because it reflected what reasonable clients would pay); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit.").

When courts review contingency fee allocations, they use "the lodestar method…as a mere crosscheck, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Chambery v. Tuxedo Junction Inc.*, No. 12-cv-06539 EAW, 2014 U.S. Dist. LEXIS 101939, at *24 (W.D.N.Y. July 25, 2014) (quote and citation omitted). *See also Johnson v. Brennan,* 10 Civ. 4712 (CM), 2011 U.S. Dist. LEXIS 105775, at **43-44 (S.D.N.Y. Sep. 16, 2011), ("While courts still use the lodestar method as a 'cross check' when applying the percentage of the fund method, courts are not required to scrutinize the fee methods as rigorously.")     Plaintiff's counsel's lodestar in this case is $9,415.00. A copy of Plaintiff's billing record is attached as "Exhibit B." Mr. Daniel Tannenbaum's standard billing rate is $350 an hour.

The amount provided to Plaintiff's counsel from the settlement fund is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit.  *See Pinzon v. Jony Food Corp.*, No. 18-CV-105(RA), 2018 U.S. Dist. LEXIS 87424 (S.D.N.Y. May 24, 2018) (awarding this firm a third, or 5.23 times the lodestar, in an early settlement and "recognizing the importance of encouraging the swift resolution of cases like this one and avoiding 'creat[ing] a disincentive to early settlement'—particularly where such settlement has provided Plaintiff with a substantial and speedy result." (quoting *Hyun v. Ippudo USA Holdings et al.*, No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016).; *Shapiro v. JPMorgan Chase & Co.*, No. 11-CV-7961 (CM), 2014 U.S. Dist. LEXIS 37872, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 21, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *Castaneda v. My Belly's Playlist LLC,* No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In light of the nature of the issues herein and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiff's requested award is reasonable. *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. at 60; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).

Plaintiff's attorney presents a brief biography as follows:

Daniel Tannenbaum is the principle of the Law Office of Daniel Tannenbaum, Esq.  He graduated Hofstra Law School in 2008, and is admitted to the New York Bar, New Jersey Bar, United States District Court, Southern District of New York and the United States District Court, Eastern District of New York. Since law school he has practiced labor and employment law and commercial litigation at a number of law firms. He is responsible for a regular caseload involving all aspects of the firm's employment docket in federal court.

\*       \*       \*

For all of the above reasons, the parties believe that this proposed settlement is fair and reasonable and therefore the parties respectfully request that the Court So Order the Stipulation of Settlement that is appended to the Agreement as Exhibit "A" and dismiss this case with prejudice.  The parties thank the Court for its attention to this matter.

Respectfully submitted,

/s/*Daniel Tannenbaum*
Daniel Tannenbaum, Esq.
Attorney for the Plaintiff

Enclosures

cc:     Aliza Balog, Esq.